also known as the Palestinian Asylum and Self-Defense Authority, also known as the Palestinian Community Relations Organization, also known as the Palestinian Authority. Mr. Klaus, Mr. Bill Thomas, Mr. Berger, and the attendees. May it please the Court, Edwin McAllister of the Fairless Law Enforcement Association, The Anti-Terrorism Clarification Act is only the latest in a long series of laws passed by Congress to deal with and protect the American people from acts of terrorism supported or sponsored by the PA and the PLO. Also this year, the Taylor Force Act was passed, which requires the PA and the PLO to cease payments to individuals who have been convicted of crimes against Israelis or Americans and to take credible steps to prevent acts of terrorism within their jurisdiction. The ATCA was passed unanimously by both chambers of Congress and then signed immediately by the President. The purpose of the ATCA is to enable Americans to access to courts to bring to justice the terrorists and their supporters who harm them. This is to facilitate the Anti-Terrorism Act, which was passed in 1991, and the case below was brought under the Anti-Terrorism Act. The purpose and the goal of the Anti-Terrorism Act was to deter terrorism by financially penalizing terrorists and their supporters by financially compensating their victims. We still have some factual uncertainty whether it will apply on February 1st, right? Your Honor, what we would say is that we have identified, according to public records, a single financial account, at least, which continues to float to the PA and the PLO. It's an INCEL account, which qualifies under the ATCA. Right, but suppose they stop taking Foreign Assistance Act funds? We have no reason to believe they will. Maybe yes, maybe no. My only point is we don't know yet. That's correct, Your Honor. We can't, at least as of right now, rule in your favor on that basis. That's correct, Your Honor. Unless the Court receives some dispositive statement prior to January 31st, then we believe the case should be held and remanded to the District Court for fact-finding. There are two elements of the statute. One is whether the PA or the PLO are establishing, maintaining, or procuring an office or facility of any kind. And two is whether they're accepting aid under certain programs. And the status quo currently is that they are qualified under both components. But from the briefs, we don't know what the truth of the matter will be on January 31st. And the office is an office in New York associated with the United Nations? Yes, Your Honor. Activities? Yes. But the statute itself says maintenance of an office, which is more than just simply operating an office. I'm sorry. Exactly what distinction are you drawing there? The language used in the ATCA is quite broad. It's maintenance, establishment, or procurement of any office or facility. The PA would argue that the mere operation of the mission in New York is not a contact that can be taken into effect because it's there for the purpose of the peace process and under the United Nations. However, the act is drawn much more broadly than that. And we believe that we could find expenditure of funds revolving around the presence of the mission, which were qualified under the ATCA. But that is an issue that would probably be best decided for the fact finding. Is there any argument that insofar as that office functions like an embassy, it's not within the jurisdiction of the United States? Your Honor, we would have to conduct fact finding on that issue. We don't have that. Assume it functions exactly like an embassy. Would that office be – I think this is a legal question, right? I mean, is the, whatever, United Kingdom's office in New York for their United Nations delegation within the jurisdiction of the United States? Or is it different because of its diplomatic status? I don't know. I apologize for interrupting you. No. In the 90s, in the Klemhoffer case, the court there found that the mission, while it was operating as a UN mission, that there were other subsidiary activities going on surrounding that. Okay, so fact finding on that. Yes. But just on the legal question, is it – do you have a rifle shot argument that that can't be right because they're not recognized as a foreign state? Well, it would not qualify as an embassy of another country. The question is whether the UN treaty – what exceptions the UN treaty would devolve upon that facility. And I guess I'm just making the point that we have a good bit of both legal and factual work to do before we could responsibly apply this. Yes, Your Honor. But if the status quo remains true on January 31st, then the law would allow for district court to assert jurisdiction under the ATCA. Why would we remand rather than just order a submission – a supplemental submission to this court? And if the answer to the questions I've been putting to you seem pretty straightforward, we could just resolve the issues ourselves, and if it looks messy, we could remand. Your Honor, this court has procedures that it can take, which I'm sure would be much more – could be more efficient, and I leave that to the discretion of the court. But to your point, there is further fact finding that will have to be done, I believe, by January – before or after January 31st. When Congress and the President pass a law regarding foreign policy, it requires a respectful review by the courts. There is no national priority in combating terrorism. This statute is a statute that regulates the procedural rights of the parties. It does not regulate the primary conduct of the PA or the PLO. As such, it applies immediately. The PA and the PLO try to argue that the anti-retroactivity presumption of Landgraf applies in this case. However, it does not because this case only creates or takes away jurisdiction. Under U.S. v. Alabama, where the Congress passed a law, while the case was pending before the Supreme Court, creating jurisdiction before the case, the Supreme Court found that that law only regulated the procedural rights of the parties, not their substantive rights. The same case we find here. Many of the PA and the PLO's constitutional challenges fall away when Daimler is examined and we see that the individual still maintains a right to consent or waive his or her right to a personal jurisdiction defense. In fact, in the Daimler case itself, one of the parties waived their right to a personal jurisdiction defense, and the court found that it was at home for the purposes of that case. Waiver is a form of consent. It has to be voluntary, though. Yes, Your Honor. Voluntary. Knowing and voluntary. And I can certainly imagine some statutes of deemed consent that don't look very voluntary. Yes, Your Honor, and there's an excellent opinion from the Second Circuit by Judge Carney around the Lucky Martin in 2016. The judge there was looking at a statute which would have exposed a party to general jurisdictions over the courts of Connecticut had a business merely signed on to register in the state. And, in fact, if they had not even been conducting business in the state, they were arguing that that created general jurisdiction over that corporation for any party for any incident. The statute in the Kleiman case is much different. It only exposes the PA and the PLO to specific jurisdiction for this narrow band of cases. It is not a general jurisdiction statute. And, furthermore, there is a 120-day period since the enactment of the law. The PA and the PLO have to make a decision. It will be a knowing and voluntary decision. In addition to Kleiman's, I understand that there's a tight relationship between the purpose of granting jurisdiction and the purpose behind the benefits allegedly conferred on the PLO and PA. Well, Your Honor, for decades there's been generous foreign aid given to the PA and the PLO by Congress. But with every grant of foreign aid to the PA or the PLO by Congress, there have also been conditions that require the PA and the PLO to renounce terrorism and to take active steps to combat terrorism within their jurisdiction, and repeated certifications of ongoing efforts. Mr. Bristow, I would like you to discuss the waiver of their personal jurisdiction, or I think forfeiture would be correct term, by waiting until after Daimler to raise it again. I'm sorry, Your Honor, I couldn't hear the question. By not raising the issue again after Goodyear, but waiting until Daimler? Your Honor, the central issue there is that the district court found that there was no prejudice to plaintiffs by defendants' decision to raise the Daimler decision a year after fact discovery, when the Goodyear decision had come out prior to the end of fact discovery. This imposes great prejudice upon plaintiffs because fact discovery had ended, and then because Daimler was now the rule in the case, plaintiffs were required to come up with a specific personal jurisdiction test. So that also cost you a lot of money. So imagine this statute, second statute, either hadn't been passed, the HCA, either hadn't been passed, or we rule that it doesn't help you for one reason or another. You would have not, and imagine you also lose under Daimler. I assume if you knew all of that, if you knew that you were going to lose under Daimler, the case would have been over, you would not have spent another three years spending money on the discovery, which might not have helped you at all, certainly not on the merits discovery. Isn't that a prejudice to you, all the money that was spent and the time spent in the three years? Your Honor, we engaged in discovery for five years. No, but I'm talking about the time between Goodyear. What's the time between Goodyear and the time that they raised? June 2011 and January 2014. Okay, so for three years you spent money, consumed resources, including your time, that you might not have spent if you had known that the case was over because of Daimler. Isn't that prejudice? Yes, Your Honor. What about the argument that they make that the at-home defense wasn't clear after Goodyear? Well, Your Honor, if it wasn't clear, they would not have raised it in two separate filings, the same counsel for the same party. Admittedly, in the first filing they did not go into great detail about the at-home defense. It was a couple of sentences and a Supreme Court brief, but that was two months after the Goodyear decision came out. Later, in another related case called Lib Nat V. Palestinian Authority in the Eastern District of Virginia, they spent five pages arguing why the Goodyear defense effectively destroyed the personal jurisdiction case of the plaintiffs there. So the PA and the PLO clearly understood what the import of Goodyear was, and they could have raised it earlier, but they did not. They waited until a year after fact discovery had closed, and plaintiffs had just won a critically important order to compel the PA and the PLO to produce documents, internal documents that identified payments made by the PA and the PLO to so-called martyrs, who are persons killed by Israeli security forces, but in this documentation they are identified by the PA and the PLO as al-Aqsa Martyrs Brigade members. Usually, on the preservation issue, usually you have to preserve arguments, right, not citations. And just assume, I know you dispute this, but assume for purposes of argument, that the general jurisdiction question was properly preserved at the outset of the case. Why isn't this nothing more than just there's an issue preserved, then there's an intervening decision that makes the case more helpful for one side or the other, and they move for reconsideration, and it's no different from if Goodyear and Daimler had come down after district court proceedings are completely done, and they go up on appeal and cite Goodyear and Daimler, they're going to win. They're not going to lose on forfeiture grounds. They're going to win on the preserved issue of general jurisdiction. Your Honor, they would have had to raise the issue in motion for summary judgment or prior to trial. This issue would have come up again. And there are decisions that find that technical compliance with Rule 12-H1 does not relieve a party from its duty to raise the defense later. When the party engages in a lot of pretrial activity and then trial activity and does not raise a personal jurisdiction defense, especially when the law has changed and there's a new rule of law, this is sandbagging, and it costs the plaintiffs a great deal of prejudice. But as we state – And the prejudice you're relying on – so your answer to Chief Judge Garland suggests that the prejudice is you spent all this time and effort that you might not have. That brings a little hollow where, to this day, you're vigorously pressing a specific jurisdiction argument. Your Honor, there are multiple forms of prejudice. One form of prejudice is that we were not allowed to construct our discovery correctly because – I get that. That seems to me different. Yes, Your Honor. Okay. Regarding the Anti-Terrorism Act – the Anti-Terrorism Clarification Act, I would just end on the question that the PA and the PLO have raised about fair warning. They argue that because the statute isn't being imposed now, they had no way of structuring their behavior properly in 2002. However, in 2002, they knew they could be sued for the conduct that they were sued for, and that's never been in question. And with that, I will sit down for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. To answer Chief Judge Garland's question, Judge Katz's question, and Mr. McAllister's answer about the five years of discovery, not only is that not prejudice to the plaintiffs, it is precisely what they wanted. It is what they were begging Judge Friedman to do repeatedly, let us have more discovery. This from plaintiffs, whose primary argument in opposition to reconsideration was, we need more discovery because specific jurisdiction is intertwined with the merits. The five years of discovery does several things. Not only is it not prejudice, the money, Your Honor, that they spent on discovery is money they would have spent taking intertwined merits discovery, getting ready for a trial. And it was a huge benefit for the parties of the Court. It is that five-year record of discovery. Why isn't there prejudice for the second reason we were exploring, which is they're doing the discovery. They would have done it anyway. But they're operating on the assumption that personal jurisdiction is off the table, right? The only live issue is a merits question. For purposes of the merits, all they have to do is connect the attack to an attempt to influence Israeli policy. And that's pretty easy to do. That's a lot easier to do than what they would have to do for specific jurisdiction purposes, which is link the attack to an attempt to influence the United States. Well, Your Honor, first of all, I question the premise of the interpretation of the ATA. Okay. But let me start with this precisely why the abuse of discretion review standard applies. Judge Friedman is much closer to that question, with all respect, to what discovery the parties were taking. And when the general jurisdiction standard was clarified by Daimler, Judge Friedman didn't steamroll the plaintiffs. He said, I'm going to give you every opportunity. Tell me. They had a lot of discovery. And they went to great lengths. They deposed the trigger man in a prison in Israel. And he says something like, well, you know, I was sent to attack Israelis or whatever.  That cinches up their merits case. I don't think so. So why would they need – well, it's very helpful for their merits case. So why would they then need to go down this rabbit hole of trying to link the attack to attempts to influence the United States? Well, if I can answer the second question first, I think you put your finger on it precisely when you say it cinches their merits case. The lesson that we have from Livna in this circuit and from Sokolow in the Second Circuit is that the liability standard under the ATA and the jurisdictional standard under the Due Process Clause are not coterminous. To have jurisdiction as opposed to evidence showing an effort to influence Israeli policy, that may be enough for the merits case, but it's not enough for jurisdiction. What Livna tells us is there must be a link. Which may be the source of the prejudice here. Well, but at first, it's not a link to the United States. So they, at that time, thought they had general jurisdiction and didn't need specific jurisdiction. Had they known that they needed specific jurisdiction, then they might have sought evidence to show that these two trigger men were lying. It's not particularly surprising that the people who killed people would say they were aiming at soldiers rather than civilians because the latter is a war crime. So their credibility on this question only matters. It doesn't matter with respect to the merits when they thought they had general jurisdiction. It only matters because they didn't know that they needed specific jurisdiction. So there's several points in there, Your Honor, if I might respond, which is this is precise to the set of inquiries that Judge Friedman undertook. He said, what is there out there? What else in the ocean haven't you fully boiled on discovery? It is more than just the attackers. It's not a question merely of credibility. There were seven depositions of the Palestinian Authority and the PLO, including three under Rule 30b-6. This is not an issue as to whether the attackers can be held liable under the ATA. It's a question of whether the PA and the PLO can. What Judge Friedman did, and he did it meticulously, was after the general jurisdiction standard changed and general jurisdiction no longer became possible, he said what a district judge should do, which is tell me what you have, tell me what you need. I'm going to give you every opportunity to crystallize your theory. I'm going to give you every opportunity to tell me what additional discovery you need. It was only when he went through that process that he held that, you know what, not only does the evidence uniformly show no link to the United States. He was applying Walden then, but he was anticipating correctly what this court ruled to live on. You haven't shown a link to the United States, and, in fact, you have proven the opposite of jurisdiction. You have proven consistently from every witness that there was no link to the United States, and that's the jurisdictional question as distinct, Judge Katz says, from the merits question. And that's why he acted well within his discretion in saying, you know what, after five years of discovery, enough is enough. I've given you every opportunity, and when you tell me you're prejudiced, that rings hollow in the sense that what else have you been asking me for for five years but more discovery? And he noted that in his decision when he said the only thing that happened during the intervening years between Goodyear and Daimler was that they got – yes, absolutely, Chief Judge Garland. It cost money, but so does getting ready for trial under any circumstances cost money. That's not prejudice. That's just part of the litigation process. What about the other part of his argument that wasn't clear that Goodyear was the law until Daimler? Well, I think Judge Friedman did an excellent job of summarizing the law. He said, first, Wright and Miller got it wrong. Wright and Miller says Goodyear didn't change the rules. It's just an application in the stream of commerce, has really no general application. And then Judge Friedman pointed to other district court judges in this circuit. So the problem is all very nice, but the Supreme Court thought it was absolutely plain. In Daimler, the court says we made it plain in Goodyear. The Supreme Court says Goodyear made it clear. And in Daimler, the court says instructed by Goodyear, we look at the question of whether they were essentially at home. So at least from the Supreme Court's point of view, it was crystal clear. And with due respect, they are the ones we have to respect and not district courts who didn't see what they had said in Goodyear. No question, Your Honor. As a matter of law, that's right. And I think with 20-20 hindsight, we all see it, having read Daimler, what Goodyear was meant to be. The question, though, is not whether or not Goodyear changed the standard at all, with due respect. It's whether or not these defendants should have apprehended what other district judges and what Wright and Miller didn't apprehend that now was the time to make that motion. Didn't we already hold that in Gilmore? No, Your Honor. Gilmore dealt with a very different circumstance. I'm glad you asked me that question. Gilmore, we made the argument that even though no 12b-2 defense was ever raised at the outset, we didn't know we should have raised one until after Daimler came out. This is very different. From the get-go, a 12b-2 defense was waived, and to Judge Katz's point, once that had been raised— Well, let me ask about this language in Gilmore. Appellees also argue that their personal jurisdiction defense was not available to them until the Supreme Court's decision in Daimler. At the time of Appellee's pre-answer motion in 2002, the legal basis for their personal jurisdiction defense did exist. It did, and that is the distinction between Gilmore and this case. Why is that? Because they knew—they're saying that in 2002, their personal jurisdiction defense did exist, and their personal jurisdiction defense was that you have to show at home. The latter part is not correct, Your Honor. What—the distinction is in Gilmore, no answer and no pre-answer motion raised a 12b-2 defense. That is precisely the opposite of the scenario here, where 12b-2 defenses were repeatedly raised— I'm not sure where the waiver occurred, but I'm on the question of whether the at-home defense was available. And looking at what the district court said, the district court says in Gilmore, defendants based most of their argument on the allegation that until Daimler was decided, the specific argument asserted in their motion, that their contacts with the District of Columbia did not render them at home, was simply not available. The court says it was—our court said it was available. In the context of rebutting the argument made by my clients in that case, that they had no need to assert a 12b-2 defense from the outset, and what this Court said was that, no, there was always a 12b-2 defense. Perhaps you wouldn't have won, but you had no excuse for not asserting a 12b-2 defense. That is a not only dramatically different— I know it's a different argument with respect to what constitutes waiver. It's not a different argument as to what argument was available. The fact that Judge Friedman thought it wasn't available is rebutted by our holding in Gilmore that it was available. I get your point that it's different if you don't raise a preanswer motion or you don't put it in your answer under 12b. But that's—and the question of whether it was available seems like we've already decided it. No, I don't think so, Your Honor, because I don't think that's what Gilmore holds, with all respect. What it says is it's dealing with the portion of the argument that there was no reason to assert a defense because it would have been futile. What the Court held in Gilmore is it wouldn't have been futile. We recognized 12b-2 defenses. It never held that that was the at-home standard in this circuit. Indeed, you would not find a decision out of this Court or out of the district court in this circuit applying an at-home standard to a general jurisdiction argument before Daimler came out. Neither of that is relevant. The Court says there was no Supreme Court or in-circuit precedent rendering a personal jurisdiction defense for all practical purposes impossible. Your Honor, we're saying the same thing— and all that availability goes to. And I think—I'm talking, Pastor, Your Honor, so if you give me a moment, I'll try to be clear. The availability issue, which is what Gilmore addressed, was is there an excuse for not asserting 12b-2? Gilmore did not decide that the standard at the time was at home. That is the distinction between Gilmore in this case and, indeed, Judge Friedman, in his opinion on reconsideration, said Gilmore presents a totally different scenario. And he's right, because the only issue that was dealt with in Gilmore, that portion that you're looking at, Your Honor, is why is that in Waldman-Sacco, our Second Circuit case, why the Court said, you know, it's okay that you belatedly raised a general jurisdiction defense. Not an at-home defense, a general jurisdiction defense, because in the Second Circuit, if you had an office here, you were considered to be subject to general jurisdiction. All that Gilmore says is that's never been the standard in the District of Columbia circuit. It does not hold that the at-home standard was the standard pre-Dimlar, and, indeed, it was not. Judge Friedman cited to a district court decision in a case called Al-Qa'nani. Al-Qa'nani was an example of where another district court in this circuit cited— That's not what determines whether at-home is a defense. What determines whether at-home is a defense is what the Supreme Court said in Goodyear. And the only way in which that arises in this case is whether or not that misapprehension of what Goodyear meant, which the Supreme Court reminded everybody about three years later, meant that there is no good excuse for having moved for reconsideration three years after— There has to be an intervening change in law. That was the ground on which he resolved the matter, right? And, indeed— And he said there was an intervening change in law. The Supreme Court said there wasn't. I think the Supreme Court is perhaps—went to the trouble in Dimlar to explain what Goodyear meant because of the confusion. But this is not a strict liability issue for my clients in terms of waiver. The question is whether they acted reasonably and whether Judge Friedman, in turn, abused his discretion in saying that there was a reason for a three-year delay in raising their decision. Is it not a question of law if you thought that there hadn't been an intervening change in law when there actually had been? Indeed, Your Honor, reconsideration is a matter—part of the reason why the abuse of discretion standard governs— But isn't it an abuse of discretion to get the law wrong? That's what the court said in Coons. Yes, but that was not what the district court decided. What the district court decided was that given all of the misapprehension out there in the atmosphere, among district courts, among commentators, among these defendants about what Goodyear meant, that they had a reasonable excuse for not moving for reconsideration until Dimlar told everybody, you know, you've got this wrong. We've been trying to be clear about this with the at-home standard clause. That is the sole context in which that issue arises in this case, and Gilmore, respectfully, never held that the standard is the at-home standard prior to the time of Dimlar. So given that this—the one question where this matters is did Judge Friedman abuse his discretion saying it was okay that you waited three years? It doesn't matter whether we read the law wrong. Not because that explains the reasonableness of our behavior into not moving after Dimlar. And that is precisely why the abuse of discretion standard applies here also, because the district judge is closer to the record, closer to the proceedings, and that's what the courts rely upon district judges to do. Having held that there was not a forfeiture, let me do briefly with the waiver question. The waiver question, in turn, has been waived in this court, was never asserted below. Despite litigation in 2005, 2006, 2007 on motions to dismiss, the plaintiffs consistently acquiesced in the merits adjudication of the Rule 12b-2 issue. They never argued there was a waiver because it wasn't sufficiently preserved. They can't make that argument for the first time in this court. And, indeed, embedded in Judge Friedman's decision on forfeiture is the recognition that that defense was correctly preserved. In terms of jurisdictional discovery, I've already explained why that five years of discovery was beneficial. And, indeed, it facilitated and, indeed, compelled Judge Friedman's decision that there is no specific jurisdiction. Again, Judge Katz, it's because of the distinction between the liability standard, which might be satisfied by proof of a connection to Israel, versus the jurisdictional standard which requires it. And, candidly, Mr. McAllister spent the first ten minutes of his argument talking about everything but what happened in the district court. So I think that should convey to this court how much confidence he has in his ability to overturn what Judge Friedman did. He should have no confidence in that because Judge Friedman then meticulously applied the results of discovery to conclude there was no specific jurisdiction, precisely for the reasons that this court decided in Livna. Livna and the theory in this case are look-alikes. For all the reasons that the court said in Livna, there was no specific jurisdiction because of no link to the United States. There was no link to the United States here. That is what Judge Friedman considered meticulously, and that's why he had such extensive briefing. I agree with you on all of that, but I'm just not sure they had a fair chance to try to develop that part of the case, just given the way the general jurisdiction issue had played out. And that's a reasonable question to ask Judge Katz. It's a question Judge Friedman asked, but it requires more than the plaintiff saying, you know what, I don't think I've been treated fairly. I want more. What the district judge is supposed to do and what the district judge did here is say, okay, what do you want? And they could never articulate anything other than we want information about their lobbying in the United States and their fundraising in the United States. Jurisdictional discovery doesn't work by saying, I want more. It requires concrete articulation of what you want. What they asked for is a look-alike copy of what the plaintiffs asked for in Livna, and in Livna, this court said it doesn't matter that zero discovery has been taken in that case. That's not sufficient to alter the jurisdictional outcome. So Judge Friedman, a fortiori, made the right decision when he looked at exactly the same jurisdictional discovery request. It is not either the defendant's job or the district court's job to cater to the plaintiffs and say, you know what, take whatever you want. He has to ask the question, as he did, to say, okay, what else and why does it matter? They couldn't move that. None of this, despite the long opening for Mr. Gallister, can be undone by action. You only have a few minutes. Do you want to talk about the statute? Yes. I was just turning to that, Your Honor. I will. First of all, to your question, Judge Katz, is the plaintiffs read the statute incorrectly in terms of the mission. What the statute says is anybody benefiting from a presidential waiver who then maintains a mission, that's irrelevant because there is no extant presidential waiver for the PA and the PLO. It hasn't been one for a couple of years. The PLO mission to the United States, which required a waiver, has been shuttered. It's a waiver of this 22 U.S.C. 5202, right? Correct. Which makes it unlawful for the PLO to establish or maintain any office, headquarters, premises, et cetera. I assume there has to be a waiver in place or else they have the New York mission or office. I'm sorry to cut you off, Judge Katz. No, I'm sorry. Go ahead. The Second Circuit held in the Klinghoffer case and the Southern District of New York held in the U.S. versus PLO case that a presidential waiver is not required for the U.N. mission because of superseding antecedent obligations the United States undertook in the U.N. headquarters agreement. I see. So the waiver only ever applied to the U.S. mission, which has now been shuttered. The president must expressly issue a waiver. No such waiver exists as to the PA and the PLO. As to aid, as Your Honor said, Judge Katz, the PA and the PLO have not made any decisions. There's nothing you can tell us. Yeah, I can tell you that they're inclined not to take the aid. They are a government. Their deliberations continue. I don't think a remand is required. It's either a yes or a no answer on that, and certainly in the first instance, to the extent the court wants to. You seem to have a dispute, though, about what constitutes aid, right? In your brief, you say certain money is not provided directly. It's provided indirectly and to somebody else. Are those not fact questions? I don't think so, Your Honor, because it's a two-part question. Does the United States give? And that raises the issues that Your Honor asked. And does the recipient disclaim? All the PA and the PLO have to do is say, I disclaim all aid, however provided that meets the language of the statute. What we say is, even if they could get past those factual hurdles, which shouldn't trouble this court, there are legal reasons why ACCA can't alter the outcome here. So just on the mechanics, your position is the maintenance of the U.N.-related New York office can't be a triggering event under this statute for reasons we've said? Yes, Your Honor. So the only relevant triggering event is whether or not your clients will continue to accept aid, and that question is one you can't yet answer? Well, they're trying not to accept. As Your Honor pointed out, they have another five, six weeks to make that decision. I think that's something we can easily inform the court about. Your Honor, I worry that with your question, I want to call the court's attention to the fact that, even though the court allowed the plaintiffs to file a supplemental brief on ACCA, we worry that there wouldn't be time for us to respond to that. We have an extensive discussion of ACCA in our opposition to their motion for leave to file a supplemental brief. Our authority to be answering those questions, Judge Katsas, is found there, as is our authority for our four other arguments as to why ACCA can't apply here. I recognize I'm out of time, but I would just ask to be able to ---- Why do you make what's your strongest? We've read the pleadings, but if you want to make the strongest argument. I think, first and foremost, there's seven different reasons why as a matter of statutory construction a statute that says, in this relevant portion, this statute is effective upon the date of enactment. The Supreme Court, in Landgraf, said a statute that says it is effective upon enactment doesn't mean any retroactive application. There's no unambiguous directive. Does that presume the application of the retroactivity presumption?  If Landgraf separately says, which would be my first point, there is no unambiguous directive requiring retroactive application. I'm starting here because of the constitutional avoidance doctrine, Your Honor. I don't actually believe our constitutional arguments are weaker than the statutory construction ones, but there's no unambiguous directive for retroactive application. Number two, even if there were any ambiguity, which I'm sure Mr. McAllister will say, you know, there was this kind of intent and it could be read this way, it's quite clear that ambiguity doesn't help them. In the Lind case, what the Supreme Court said was it has to be perfectly clear that there's retroactive application. Ambiguity works against them, not in their favor. There's no rule of lenity here that will allow ambiguity. But if we regard this as a jurisdictional and, therefore, procedural statute as to which there is no constitutional question, then we don't have to do any avoidance. You only do avoidance if you think there's something to be avoided. Well, with respect, that would require contradicting the panel's decision in Livnot, which made it crystal clear that there is a substantive, not a procedural, right under due process to be free of jurisdiction in a forum where the defendant is not at home. That is not a procedural rule. That's not a subject matter jurisdiction rule. That is precisely what ACCA tries to undo. But that's a substantive right because if it's not a substantive right, then Livnot doesn't mean what it says, which is when this Court said in Livnot, Congress can't wish away a constitutional provision, can't wish away the substantive right under the due process clause to be free from jurisdiction in the United States where it's not at home. So that's another reason under our seven reasons of statutory construction. Livnot didn't address the question of waiver, of knowingly and freely waiving, did it? Livnot, the only jurisdictional hook there was general jurisdiction. That wouldn't be the jurisdictional hook here. The question here is whether Congress through this Act can provide jurisdiction contingent on acceptance of money. I'm thrilled Your Honor asked me that question because that frames the unconstitutional conditions doctrine and why it applies here. Livnot says it's a substantive enumerated constitutional right to be free under the due process clause from jurisdiction. But Congress is saying if you want aid, you've got to surrender that constitutional right. That is precisely what the unconstitutional conditions doctrine cases say Congress can't do. And I respectfully refer the Court to Justice Alito's opinion in the Coons case, which says, you know what, every time we go through unconstitutional conditions, somebody says, it's okay because we don't have to give you this benefit. It's an act of legislative grace. It's a gratuity. No, but Congress surely has more latitude when they're addressing funding conditions than when they're imposing direct requirements. Only when what they seek to do is either withhold funding or provide it. Your Honor is absolutely right. Congress doesn't have to give a penny. What's wrong with Congress saying that when we spend our foreign assistance money, to which no one has an entitlement, we want only people who have renounced terrorism and are making amends for any past terrorist acts? And that crystallizes the distinction between what the previous statutes have done, which have said, if we're not satisfied that you're behaving the way we want, you get no aid. Congress may do that. What Congress may not do, and what Coons said, is every one of our unconstitutional conditions cases deals with gratuitous government benefits. But just because the government doesn't have to give it to you, doesn't mean that it can make you surrender an enumerated constitution. No, but it's a sufficient answer to an unconstitutional conditions objection to say that the condition advances the purpose of the spending program. Respectfully, I disagree, because the cases that support that analysis, Your Honor, which are rational relationship cases, all deal with non-enumerated rights under the Constitution. The unconstitutional conditions doctrine says not when you get to enumerated rights. This is what Coons says. When it comes to enumerated rights under the Constitution, it doesn't matter that the government has a legitimate, rational relationship to this goal. They simply can't ask for it. It's a bargain on which the government cannot insist, and that's the distinction between those cases. Other questions? Questions? Thank you. Thank you, Your Honor. Any time limits? Okay. Thank you, Your Honors. I'd like to address a few points made by opposing counsel. One point was Judge Katsas was asking a question about prejudice, and counsel stated, although I think Judge Katsas understood where the prejudice arose from, but opposing counsel stated again that we had five years of discovery and that was our chance. The point is that Judge Freeman made his request about the specific jurisdictions, and the Daibler case was imposed after the five years of discovery. We didn't have any discovery on the connections between the terror campaign in and near Israel and the influence campaign which was occurring in the United States. Secondly, regarding the But he did at some point ask you what are the subjects on which you want further discovery. Yes, Your Honor. Right, and you did not identify the missing link under LIVNOT, which is the connection between the particular attack and attempts to influence United States policy. Your Honor, in our briefs we made a different jurisdictional discovery request in the light of LIVNOT. In our jurisdictional discovery requests in our briefs we addressed two points. One is, was the PA through the AAMB deliberately targeting Americans and killing Americans launching attacks against Americans? And two was, what are the external communications by the PA and the PLO regarding those attacks on the Americans? Because this goes to the heart of the conspiracy that is at issue in this case. So those are different than the two requests listed at A143? Yes, Your Honor. They are different than the requests listed at the district court. In what format were these additional requests made? We articulated a more expansive view of the jurisdictional discovery in the briefs. In the district court? In the briefs in this court. Yeah, but in the district court. In the district court we requested jurisdictional discovery less sophisticated than the requests that we described at the appellate court level. And why should we not cut that off as a new argument first raised on appeal? Well, Your Honor, the court has discretion to review pure questions of law, and it's been well briefed by both sides, thus there's less prejudice. Pure questions of law, but this is about the nitty-gritty of what you're seeking, the subjects on which you're seeking discovery and why. Yes, Your Honor, but in this case the Livnat decision is an intervening event, and we had to address the Livnat decision. And remind me, when did Livnat come down relative to the procedural history of this case? Livnat was decided by this court last year in 2017. Long after the close of the discovery. Long after. The judge's decision is in 2015? 2015, yes, Your Honor. And I see that I'm out of time. Other questions? Thank you. We'll take that on this motion. Thank you.
judges: Garland, Katsas, Williams